# DECLARATION of RACHEL ROYSTON, CFE, CAMS

I, Rachel Royston, do hereby declare:

## BACKGROUND/EXPERIENCE

1. I am a Financial Investigator under contract with the United States Attorney's Office in Portland, Oregon where I have been so employed since May 2021. Prior to holding this position, I was employed by the State of Oregon for 14 years, most recently as an Enforcement Investigator for the Division of Financial Regulation (DFR). I have a Bachelor of Science degree in Business and Accounting and hold credentials as a Certified Fraud Examiner (CFE) and Certified Anti Money Laundering Specialist (CAMS). Throughout my professional career, I have conducted numerous complex financial investigations, interviewed hundreds of people, and analyzed thousands of records. I have intimate knowledge of the various financial systems and broad experience with analyzing financial transactions to trace funds, build financial profiles, and identify money laundering methods. I have conducted and received specialized training in the detection and investigation of money laundering techniques.

## PURPOSE OF THIS DECLARATION

2. This declaration is offered in support of a complaint *in rem* seeking forfeiture of real property, commonly known as 4506 SE Anderegg Loop, Portland, Oregon 97236 (hereinafter "Defendant Real Property") and more particularly described as:

> Lot 26, POWELL BUTTE HEIGHTS, in the City of Portland, County of Multnomah and State of Oregon.

The property outlined above is property constituting or derived from proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 1343, wire fraud, and is property involved in or traceable to property involved in a violation of 18 U.S.C. §1957, laundering of monetary instruments. The property is therefore subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) & (C).

3. The information contained in this declaration is information known to me from my training and experience, by personal knowledge, and by written and oral reports provided by witnesses and law enforcement officers involved in the investigation. Since this declaration is being submitted for the limited purpose of a complaint *in rem* for forfeiture, I have not included each and every fact known to me concerning this investigation but only information sufficient to show probable cause that the Defendant Real Property in question is subject to forfeiture. This declaration involves an investigation by the Federal Bureau of Investigation (FBI) and the Internal Revenue Service Criminal Investigations Unit (IRS-CI) into Sergey and Galina Lebedenko (husband and wife).

## SUMMARY OF THE INVESTIGATION

4. The FBI initiated an investigation regarding Sergey and Galina Lebedenko (the "Lebedenkos") based on information provided by representatives of the Portland-based litigation firm, Angeli Law Group LLC ("ALG"). ALG was engaged to represent the victim ("V-1")[1] in this matter. ALG presented information alleging that between approximately November 2016 and November 2023, the Lebedenkos, through their wholly owned company Astra Car Service, LLC, stole over $34 million from V-1.

---

[1] For the purposes of this declaration, the victim, known by law enforcement, will be referred to as V-1.

5. On January 22, 2023, the Lebedenkos were charged via criminal complaint with wire fraud and money laundering related to the conduct described in this declaration. They were subsequently charged via Indictment on February 21, 2024, and are currently on pretrial release.

6. On May 28, 2004, the Lebedenkos filed an application for registration with the Oregon Secretary of State Corporation Division for Astra Limousine and Town Car Service, (Registry No. 222266-90). On April 12, 2016, the Lebedenkos filed articles of organization with the Oregon Secretary of State Corporation Division for Astra Car Service, LLC (Registry No. 1206409-90).

7. In or around 2007, V-1 hired Sergey Lebedenko (hereinafter "Sergey") to provide intermittent personal transportation services. Sergey originally charged V-1 $90 an hour. In the following years, Sergey convinced V-1 to give him more responsibility with managing various aspects of V-1's personal estate, including but not limited to oversight for maintenance and groundskeeping staff. When the business relationship evolved to include these additional responsibilities, V-1 discussed reducing the rate to half the original $90 per hour.

8. Sergey quickly gained the trust of V-1. Since Sergey was not a full-time employee, he was not paid on a scheduled basis and was not paid through any payroll. Sergey was eventually given authorization to charge V-1's American Express (AMEX) credit card for the sole purpose of payment for actual services rendered. Monthly statements for the AMEX card were typically delivered to V-1's New York apartment so they were not seen by V-1. The

AMEX card was also set up on autopay so that the balance would be automatically paid off each month using funds from V-1's personal bank account.

9. The extraordinary charges to V-1's AMEX included many charges for alleged services when V-1 and his partner were not even in the Portland area. For example, during the seven-day period from April 24 to April 30, 2022, the Lebedenkos charged V-1's AMEX card 180 times for a total amount of $497,490. During that time, V-1 and his partner were not in Portland and had minimal interaction with Sergey.

10. The investigation identified bank accounts held at U.S. Bank ("USB") and OnPoint Community Credit Union ("OnPoint") that are owned by the Lebedenkos. Records were obtained from OnPoint for the following accounts:

| | |
|---|---|
| 1012808-1 | Sergey and Galina Lebedenko |
| 1012808-8 | Sergey and Galina Lebedenko |
| 1291730-22 | Astra Car Service c/o Sergey Lebedenko |
| 1291730-1 | Astra Car Service c/o Sergey Lebedenko |

11. Records were obtained from USB for the following accounts:

| | |
|---|---|
| 153652788313 | Sergey and Galina Lebedenko |
| 153657579113 | Astra Limousine and Town Car Service – Sergey Lebedenko |

12. Records show that Astra's business checking account ending 1730-22 was opened on August 31, 2017, and was initially funded by an account closing check from the USB Astra business account ending 9113. Both accounts received funds for processed transactions through a merchant service (credit card) processor. A review of the accounts identified a little over $34.2 million in merchant service deposits between January 2017 and December 2023.

Declaration of Rachel Royston, CFE, CAMS                    EXHIBIT A   PAGE 4
                                                             Complaint *In Rem*
                                                             FOR FORFEITURE

13. An analysis of V-1's AMEX transactions identified charges by Astra for the same time period totaling a little over $34 million. These records suggest that charges to V-1's AMEX were the primary source of income for the Lebedenkos.

14. A review of the Lebedenkos' OnPoint savings account ending 2808-1 identified approximately $16.2 million in deposits between December 2015 and February 2024. Nearly 99% of those deposits were funded by transfers from related accounts at OnPoint and USB; primarily the Astra business accounts and the Lebedenko's personal accounts. Analysis of these accounts identified that the overwhelming bulk of the Lebedenkos' income was generated from charges to V-1's AMEX.

15. The Defendant Real Property was originally purchased in October 1999 for $220,000. At the time, the Lebedenkos obtained a mortgage in the amount of $198,000. By 2016, the value of the property had risen to $400,000. Records obtained from OnPoint included documents for loan number 116028189. These records show that on April 4, 2016, the Lebedenkos closed on a $320,000 cash-out refinance on the Defendant Real Property. The loan application identifies existing mortgages and liens on the property that are to be paid off with the proceeds from the loan. The funds were used to pay off the following loans and debts:

    | | |
    |---|---|
    | Ditech Financial LLC | $ 152,495.69 |
    | Bank of America | 127,671.23 |
    | Oregon Dept of Revenue | 32,732.79 |
    | | $ 312,899.71 |

16. The Lebedenkos made mortgage payments on this loan through November 2017. According to payment history records provided by OnPoint, a final payment in the amount of

$309,945.85 was made on November 28, 2017. A review of the OnPoint savings account ending 2808-1 showed a transfer in the same amount on the same day made to "1012808-6 Mortgage." This is the member account connected to the above listed mortgage loan ending 8189.

## CONCLUSION

17. Based on the facts set forth herein, I believe that probable cause exists to show that the Defendant Real Property is property constituting or derived from proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 1343, wire fraud, and property involved in or traceable to property involved in a violation of 18 U.S.C. §1957, laundering of monetary instruments, and are therefore subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) & (C).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 27th day of September 2024.

*s/ Rachel Royston*
Rachel Royston, CFE, CAMS
United States Attorney's Office